UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. TRETHEWEY,

Plaintiff,

v.

DANIEL E. PEKRUL,

Defendant.
______________________/

CASE NO. 2:10-CV-12335
CHIEF JUDGE GERALD E. ROSEN
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (docket #15)**

I. RECOMMENDATION: The Court should grant defendant's motion for summary judgment.

II. REPORT:

A. *Procedural Background*

Plaintiff Michael J. Trethewey commenced this civil rights on June 12, 2010, pursuant to 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments. The sole defendant is Daniel E. Pekrul, who at the times relevant to this suit was the Commanding Officer of the Michigan State Police's Internal Affairs Division. Plaintiff alleges that on June 13, 2007, he was arrested by members of the Michigan State Police's Third District Fugitive Team, a multi-jurisdictional task force. His arresting officers consisted of two plainclothes officers of the Michigan State Police, a uniformed officer of the Michigan State Police, and a plainclothes officer of the Michigan Department of Corrections. *See* Compl., ¶ 7. Plaintiff alleges that the arresting officers used excessive force in effecting his arrest, resulting in a number of severe injuries. *See id.*, ¶ 9. The arresting officers are the subject of a separate civil rights suit filed by plaintiff. *See Tretheway v.*

*Stimac*, No. 2:08-cv-12156 (E.D. Mich.). Plaintiff's claims in this case arise from defendant Pekrul's alleged failure to investigate his claims.

Plaintiff alleges that his attorney contacted the Internal Affairs Division on December 17, 2007, to initiate a complaint against the arresting officers. *See* Compl., ¶ 11; Pl.'s Br., Ex. 1, Dep. Tr., of Dan Pekrul, at 33 [hereinafter "Pekrul Dep."]. The following day, plaintiff's mother spoke on the phone with defendant Pekrul to follow up on the complaint, and on January 25, 2008, plaintiff's counsel sent records relating to plaintiff, including medical records, to Pekrul at his request. *See* Compl., ¶¶ 12-13; Pekrul Dep., at 34-35; Pl.'s Br., Ex. 3. Plaintiff filed his suit against the arresting officers on May 17, 2008. As part of the discovery in that suit, plaintiff subpoenaed the entire internal affairs investigative file, and later requested e-mails sent or received by Pekrul that were reflected in the file. The State's information technology representative later confirmed that the hard drive for defendant Pekrul's computer had been erased and none of the e-mails had been archived. On April 2, 2009, defendant Pekrul was deposed by plaintiff's counsel. At the deposition, defendant Pekrul produced 14 pages of personal handwritten notes, which he discovered when moving his office. *See* Compl., ¶¶ 15-17; Pekrul Dep., at 47-52; Pl.'s Br., Ex. 6. Plaintiff alleges that Pekrul testified that he failed to comply with the official orders concerning internal affairs investigations in a number of respects, including by failing to: notify the officers involved of the complaint; interview the officers involved or any witnesses; conduct any investigation; maintain thousands of e-mails relating to internal affairs investigations, including those relating to plaintiff, instead making a unilateral decision to delete them; include all evidence in the internal affairs file; and inform plaintiff or his attorney of his findings. *See* Compl., ¶ 18; Pekrul Dep., 69-73, 90, 97, 142-51, 156. Plaintiff alleges that defendant's failure to properly investigate constitutes

ratification of the arresting officers' illegal acts, that defendant is responsible for the destruction or spoliation of evidence, that defendant "deliberately, knowingly, willfully, intentionally, and recklessly disregarded his duties and obligations as a law enforcement officer charged with the duty to investigate allegations of wrongdoing," and that defendant "acted with reckless disregard and deliberate indifference to the supervision, training, discipline, and alleged unlawful acts and/or omissions of and otherwise attributable to the individual officers involved in Mr. Trethewey's arrest[.]" *See id.*, ¶¶ 22-27.

This matter is before the Court on defendant Pekrul's motion to dismiss or for summary judgment. Defendant argues that his alleged failure to conduct any investigation did not violate any right protected by the Constitution, and that he is entitled to qualified immunity. Defendant also argues that neither federal nor Michigan law recognizes an independent cause of action for spoliation of evidence. Plaintiff filed a response on April 7, 2011. Plaintiff argues that defendant is not entitled to summary judgment, and states that he is not asserting an independent cause of action for spoliation of evidence. Defendant filed a reply on April 21, 2011. For the reasons that follow, the Court should grant defendant's motion for summary judgment.

B. *Legal Standard*

Defendant moves both for dismissal under Rule 12(b)(6) and for summary judgment under Rule 56. A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). Here, both parties have submitted matters outside the pleadings in arguing the motion, and thus the Court should treat the motion solely as one

for summary judgment.

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C. *Analysis*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege, or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Thus, "[t]he first step in any such claim is to identify the specific constitutional [or statutory] right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality op.); *see also, Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, plaintiff's claims against defendant Pekrul fail on the first element, because he cannot show that defendant Pekrul deprived him of any right, privilege, or immunity secured by the United States Constitution or federal law.

At the outset, plaintiff's argument in his response that the federal law violated by defendant in this case is § 1983 itself is without merit. Plaintiff argues that defendant "closed the gateway to the avenue of justice, the 'gate' being 42 U.S.C. § 1983," and that defendant has "deprived him of

the opportunity to even make [the determination of whether his rights were violated] by violating a fundamental right to which he is otherwise entitled – the opportunity provided by 42 U.S.C. § 1983 to not only discovery but to pursue applicable claims asserting violations of Constitutional rights to which he is entitled[.]" Pl.'s Br., at 19. However, § 1983 itself cannot serve as the federal law the violation of which gives to a § 1983 suit, because § 1983 provides no substantive rights. As the Supreme Court has repeatedly explained, § 1983 is merely a procedural vehicle which provides a damages remedy, and thus "one cannot go into court and claim a 'violation of § 1983'–for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979); *see also*, *Albright*, 510 U.S. at 271 (plurality op.) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979) ("Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"); *Wilson v. Garcia*, 471 U.S. 261, 278 (1985) ("Section 1983, of course, is a statute, but it only provides a remedy and does not itself create any substantive rights.").

It could be that, through his argument, plaintiff is attempting to assert that defendant Pekrul's actions deprived him of his constitutional right of access to courts by destroying evidence that could be used in his § 1983 suit against the arresting officers. However, any such claim fails as a matter of law. In *Swekel v. City of River Rouge*, 119 F.3d 1259 (6th Cir. 1997), the plaintiff brought suit alleging that the city defendants had deprived her of her right to access the Courts by concealing or destroying evidence. The court set forth a framework for analyzing such claims, explaining:

> A court must analyze several factors before deciding whether a person's fundamental right of access to the courts has been violated. First, a court must ascertain whether the abuse occurred pre- or post-filing. When the abuse transpires post-filing, the aggrieved party is already in court and that court usually can address the abuse, and thus, an access to courts claim typically will not be viable. If the abuse occurs pre-filing, then the plaintiff must establish that such abuse denied her

> "effective" and "meaningful" access to the courts. She can do this only by showing that the defendants' actions foreclosed her from filing suit in . . . court or rendered ineffective any . . . court remedy she previously may have had.

*Id*. at 1264-65 (citation omitted). And in *Christopher v. Harbury*, 536 U.S. 403 (2002), the Court explained that there are two categories of access to courts claims. The first involves "forward-looking" claims, consisting of alleged systematic denials of access which prevent a person from bringing suit. In such a case, "[t]he opportunity has not been lost for all time, . . . but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *See id*. at 413. The second category involves "backward-looking" claims, and "covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id*. at 413-14. In either case, however, "the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id*. at 415. Therefore "[i]t follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint. . . . It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id*.

Here, plaintiff has not presented any evidence to create a genuine issue of material fact as to whether he lost any evidence relevant to his civil rights claims against the arresting officers. Plaintiff does not allege that defendant Pekrul destroyed any evidence relating to the actual arrest; the only evidence allegedly destroyed was Pekrul's own e-mails, reflecting the adequacy of his investigation. Plaintiff does not allege that these e-mails contained any otherwise unavailable

evidence in support of his substantive claims against the arresting officers. Here, as in *Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir.1986), "plaintiff knew the identity of the defendant[s] and had all of the requisite facts to file suit," and "already had a pending . . . court damage suit." *Swekel*, 119 F.3d at 1263. Further, plaintiff has presented voluminous evidence against the arresting officers in that suit. The numerous exhibits attached to plaintiff's responses to the arresting officers' motions for summary judgment in that case included medical reports; the depositions of the four arresting officers, plaintiff and his wife, and four fact witnesses; an expert report on the damages to plaintiff's car; the EMT and paramedic reports; and various photographs of the scene of the arrest, the vehicles, plaintiff, and defendants. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J., filed 12/31/09 and 4/3/10, in *Trethewey v. Stimac*, No. 08-12156 (E.D. Mich.).[1] Indeed, the Court has already denied the arresting officers' motions for summary judgment in that case, and that decision has been affirmed on interlocutory appeal. *See Trethewey v. Stimac*, ___ Fed. Appx. ___, 2011 WL 2637153 (6th Cir. July 6, 2011). In light of the voluminous evidence plaintiff has amassed in support of his claims against the arresting officers, the tangential nature of the evidence allegedly destroyed by defendant Pekrul, and the fact that plaintiff's claims against the arresting officers have already survived summary judgment, plaintiff has failed to show how any "of the alleged abuses prevented h[im] from filing suit or obtaining effective redress," *Swekel*, 119 F.3d at 1263, nor has he "identif[ied] a remedy that may be awarded as recompense but [which is] not otherwise available in" his suit against the arresting officers, *Christopher*, 536 U.S. at 415. *See Thompson v. Boggs*, 33 F.3d 847,

---

[1]Pursuant to FED. R. EVID. 201 (court may take judicial notice of any fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."), the Court may take judicial notice of its own records. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *Isaac v. Jones*, 529 F. Supp. 175, 179 n.2 (N.D. Ill. 1981).

852-53 (7th Cir. 1994) (arresting officers' alleged falsification of police report did not deprive plaintiff of access to courts where "he was personally involved in the incident and thus had firsthand knowledge of all the facts and circumstances surrounding his arrest," he "called two disinterested eyewitnesses to the arrest, . . . both of whom observed and testified concerning the facts and circumstances surrounding [defendant's] arrest of Thompson," and "the facts known to Thompson concerning the arrest were sufficient to enable him to promptly file the instant lawsuit.").

Nor did defendant Pekrul's alleged failure to investigate the incident deprive plaintiff of any federal constitutional right so as to raise a claim for damages cognizable under § 1983. It is well established that citizens have "no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). Thus, plaintiff had "no substantive right of any kind to an investigation of h[is] excessive force complaint . . . , much less one created by the Constitution." *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002). Nor does defendant Pekrul's alleged failure to follow state rules or orders raise a cognizable due process claim. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756-68 (2005); *Harrington v. County of Suffolk*, 607 F.3d 31, 34-35 (2d Cir. 2010).

Finally, plaintiff cannot hold defendant Pekrul liable for the alleged excessive force of the arresting officers under a theory that his failure to investigate ratified the arresting officer's actions. It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is

inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also*, *Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976).

Here, plaintiff's attempt to impose supervisory liability on defendant Pekrul through a ratification theory is without merit, for two reasons. First, no allegation in plaintiff's complaint nor any evidence in the record suggests that defendant Pekrul had any supervisory role over the arresting officers. The complaint alleges only that Pekrul was the commanding officer of the Internal Affairs Division. It does not allege that Pekrul was in any way responsible for the training or day-to-day supervision of the arresting officers. And although Pekrul was responsible for conducting internal

affairs investigations, the record is devoid of any evidence with respect to whether Pekrul himself had any power to impose discipline on other officers, rather than merely making findings or recommendations. Because there is no evidence that defendant Pekrul had supervisory responsibility over the arresting officers, and because supervisory liability cannot be imposed on a non-supervisory official, *see Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *Sandson/Sanchez v. Harris*, No. 96-CV-4675, 1998 WL 812564, at *11 (E.D.N.Y. June 29, 1998); *Arce v. Miles*, No. 85 Civ. 5810, 1991 WL 123952, at *6 (S.D.N.Y. June 28, 1991), plaintiff's ratification theory fails as a matter of law.

Further, even if Pekrul could be considered a supervisory official, his failure to investigate the incident is insufficient to establish that he ratified, and thus was personally involved in, the alleged deprivation of plaintiff's rights. As the Sixth Circuit has repeatedly explained, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988); *see also*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Salehpour v. University of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).[2] Here, there is no evidence that defendant Pekrul encouraged the arresting

---

[2]In *Marchese v. Lucas*, 758 F.2d 181 (6th Cir. 1985), the Court imposed supervisory liability on a Sheriff in part based on his failure to investigate. This case, however, is distinguishable. In *Marchese*, the Sheriff was sued in his official capacity, and was deemed by the court to be a policy maker for the county, rendering his failure to investigate an official policy or custom of the county for purposes of imposing liability. *See id.* at 188-89. *Marchese* is inapplicable to a suit brought against a non-policy making official in his individual capacity. See *Loy v. Sexton*, 132 Fed. Appx. 624, 627 (2005); *Walker v.*

officer's alleged use of excessive force or directly participated in it. Thus, he may not be found liable simply for his failure to investigate the incident.

D. *Conclusion*

As explained above, Pekrul had no constitutional duty to investigate the incident at issue, and neither his failure to do so nor his destruction of his e-mails deprived plaintiff of his constitutional right to access the courts. Plaintiff's claims against defendant Pekrul are essentially that Pekrul failed to do his job, *see* Def.'s Br., at 17, and that his response to the incident and plaintiff's complaints about the arresting officers has been arrogant, defiant, and flippant, *see id*. at 19. The Constitution, however, does not enact a code of conduct for state officials, nor does it require them to do their jobs or to do so in a courteous manner. The task before the Court is not to determine of defendant Pekrul's alleged acts and omissions are "reprehensible," but only to "determine whether [his] actions amounted to a constitutional violation." *Swekel*, 119 F.3d at 1264. Because there is no genuine issue of fact with respect to whether defendant Pekrul himself violated any right protected by the Constitution, plaintiff's § 1983 claim against defendant Pekrul fails as a matter of law. Accordingly, the Court should grant defendant's motion for summary judgment.

III. NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

---

*Norris*, 917 F.2d 1149, 1457 (6th Cir. 1990); Alexander v. Newman, 345 F Supp. 2d 876, 883 n. 4 (W.D. Tenn. 2004). Although plaintiff's complaint does not indicate whether Pekrul is sued in his individual or official capacity, the complaint contains no allegations suggesting that Pekrul was a policy making official. Further, the complaint must be construed as being against Pekrul solely in his individual capacity, because the complaint seeks only monetary damages as relief and it is well established that the Eleventh Amendment bars damages actions against state officials in their official capacities. *See Loy*, 132 Fed. Appx. at 627-28 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)); *Walker*, 917 F.2d at 1457 (same).

.

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/8/11

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on September 8, 2011.

s/Eddrey Butts
Case Manager